**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

SHAWN FREMSTAD,

          *Plaintiff*,

    v.

CENTER FOR ECONOMIC AND POLICY
RESEARCH, *et al.*,

          *Defendants*.

No. 25-cv-1639 (DLF)

---

**<u>MEMORANDUM OPINION AND ORDER</u>**

Shawn Fremstad, proceeding *pro se*, brings this defamation action against his employer, the Center for Economic and Policy Research, and its co-executive director, Eileen Appelbaum. Before the Court are Fremstad's Motion to Remand, Pl.'s Mot., Dkt. 10, and the defendants' Motion to Dismiss, Defs.' Mot., Dkt. 8. For the following reasons, the Court will grant Fremstad's motion and dismiss the defendants' motion as moot.

## I.    BACKGROUND

Shawn Fremstad has worked as a researcher for the Center for Economic and Policy Research (CEPR), a nonprofit think tank in Washington, D.C., since 2019. Am. Compl. ¶¶ 5–6, 9, 12, Dkt. 1-6. He brings this defamation action against CEPR and Appelbaum based on allegedly false statements she made in 2024.

First, Fremstad alleges that on February 26, 2024, Appelbaum stated during a meeting he did not attend that Fremstad "is not permitted to have any connection with the domestic team [at CEPR]." *Id.* ¶ 32. Appelbaum allegedly also published the statement online in a "'Google Doc' that can be accessed by anyone with the html link." *Id.* ¶ 29. According to Fremstad, this statement was false because "CEPR management was not actually prohibiting [him] from interacting with

the Domestic Team," *id.* ¶ 44, and it maligned him by implying that he had engaged in serious misconduct, *id.* ¶ 45.

Second, Fremstad further alleges that on August 29, 2024, Appelbaum sent an email to "CEPR's main email list," *id.* ¶ 50; *see id.* ¶ 41, stating that Fremstad was "proposing to do a deep dive" into a project "for his benefit," "expecting to do it on CEPR work time and get paid by CEPR for doing it," and that he was acting "outside the bounds of common behavior," *id.* ¶ 42 (citation modified).

Fremstad contends that Appelbaum's statements were false; "made outside of any disciplinary, performance evaluation, or other process governed by the CBA"; and "widely broadcast to groups of people that included non-employees and interns." Pl.'s Mem. 3–4, Dkt. 10-2.

As a non-supervisory employee at CEPR, Fremstad is represented by the Nonprofit Employees Professional Union, IFPTE Local 70 (NPEU). Am. Compl. ¶ 10. NPEU has a collective bargaining agreement (CBA) with CEPR management. *Id.* The CBA contains a management rights provision, which provides, among other things, that CEPR "retains and may exercise, in its discretion, the right to . . . determine [employees'] qualifications and assign and direct their work; and determine the processes and methods by which operations are conducted." Defs.' Mot., Ex. A, at 6, Dkt. 8-2. The CBA also defines the term "grievance" and provides for the arbitration of certain unresolved grievances. *Id.* at 13.

On February 25, 2025, Fremstad filed suit in the Superior Court of the District of Columbia. Compl., Dkt. 1-3. The defendants removed the case to this Court pursuant to 28 U.S.C. § 1441(a) on May 21, 2025. Notice of Removal, Dkt. 1.

## II.    LEGAL STANDARD

"Ordinarily, the plaintiff is entitled to select the forum in which he wishes to proceed." *Araya v. JPMorgan Chase Bank, N.A.*, 775 F.3d 409, 413 (D.C. Cir. 2014).  But a defendant may remove a civil action filed in state court to a federal district court that has original subject matter jurisdiction.  28 U.S.C. § 1441(a).

Federal district courts are courts of limited jurisdiction, and it is "presumed that a cause lies outside this limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994).  As relevant here, district courts have "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States."  28 U.S.C. § 1331.

The removing party bears the burden of showing that removal is proper.  *Walter E. Campbell Co. v. Hartford Fin. Servs. Grp.*, 48 F. Supp. 3d 53, 55 (D.D.C. 2014).  When assessing a remand motion, "[c]ourts must strictly construe removal statutes, resolving any ambiguities regarding the existence of removal jurisdiction in favor of remand."  *Smith v. Hendricks*, 140 F. Supp. 3d 66, 70 (D.D.C. 2015) (citing *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 107–09 (1941)); *see also Steward v. Goldman Sachs Mortg. Co.*, 206 F. Supp. 3d 131, 134 (D.D.C. 2016) ("Any uncertainty about the existence of subject matter jurisdiction should be resolved in favor of remand.").  The court "must assume all of the facts set forth by plaintiff to be true and resolve all uncertainties as to state substantive law in favor of the plaintiff." *Walter E. Campbell Co.*, 48 F. Supp. 3d at 55.

## III.    ANALYSIS

Fremstad moves to remand this case for lack of subject matter jurisdiction.  Although his complaint raises a state law defamation claim, the defendants contend that this Court may exercise

federal question jurisdiction over the claim because it is preempted by Section 301 of the federal Labor Management Relations Act (LMRA).

Under Section 301 of the LMRA, "suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce . . . may be brought in any district court of the United States having jurisdiction of the parties." 29 U.S.C. § 185(a). To "ensure uniform interpretation of collective-bargaining agreements," *Lingle v. Norge Div. of Magic Chef, Inc.*, 486 U.S. 399, 404 (1988), courts must apply federal law to "labor-contract disputes" that require interpreting the terms of a collective bargaining agreement, "whether such questions arise in the context of a suit for breach of contract or in a suit alleging liability in tort," *Allis-Chalmers Corp. v. Lueck*, 471 U.S. 202, 211 (1985).

Accordingly, Section 301 preempts a state law claim if it "require[s] construing the [CBA]," *Lingle*, 486 U.S. at 407, or if the state law claim "is substantially dependent upon analysis of the terms of [the CBA]," *Allis-Chalmers*, 471 U.S. at 220. But "§ 301 cannot be read broadly to pre-empt nonnegotiable rights conferred on individual employees as a matter of state law." *Livadas v. Bradshaw*, 512 U.S. 107, 123 (1994). Courts must carefully examine the "legal character of [the] claim," *id.*, and "as long as the state-law claim can be resolved without interpreting the agreement itself, the claim is 'independent' of the agreement for § 301 pre-emption purposes," *Lingle*, 486 U.S. at 410. "[T]he bare fact that a collective-bargaining agreement will be consulted in the course of state-law litigation plainly does not require the claim to be extinguished." *Livadas*, 512 U.S. at 124; *see also Humble v. Boeing Co.*, 305 F.3d 1004, 1010 (9th Cir. 2002) ("[A] CBA provision does not trigger preemption when it is only *potentially* relevant to the state law claims, without any guarantee that interpretation or direct reliance on the CBA terms will occur.").

To succeed on his defamation claim under D.C. law, Fremstad must show "(1) that the defendant made a false and defamatory statement concerning the plaintiff; (2) that the defendant published the statement without privilege to a third party; (3) that the defendant's fault in publishing the statement amounted to at least negligence; and (4) either that the statement was actionable as a matter of law irrespective of special harm or that its publication caused the plaintiff special harm." *Oparaugo v. Watts*, 884 A.2d 63, 76 (D.C. 2005) (citation modified).

On its face, Fremstad's claim is independent of the CBA. Fremstad does not contend that the defendants breached the terms of the CBA, nor does he seek to vindicate any rights created by the CBA. *See generally* Am. Compl. Rather, his defamation claim arises under District of Columbia law, independent of any of the CBA's provisions. *Cf. Van Allen v. Bell Atl.-Washington, D.C., Inc.*, 921 F. Supp. 830, 832–33 (D.D.C. 1996) (Plaintiff's causes of action, including intentional infliction of emotional distress, are "all state causes of action under District of Columbia law," and "[n]one of these rights is created by the collective-bargaining agreement between [defendant] and the employees' union."); *Tellez v. Pac. Gas & Elec. Co.*, 817 F.2d 536, 538 (9th Cir. 1987) ("California's defamation law establishes nonnegotiable rights and obligations independent of any labor contract."); *Hennegan Co. v. Graphic Commc'ns Conf.*, No. 09-cv-155, 2009 WL 3151224, at *9 (E.D. Ky. Sept. 25, 2009) ("The defamation right being asserted by Plaintiff in this case is created by Kentucky state law, not the expired CBA."); *Batson v. Shiflett*, 602 A.2d 1191, 1210 (Md. 1992) (Plaintiff's "claims of libel [and] slander . . . are rights that exist, under Maryland law, independent of any provision of the [labor documents].").

Although none of the four elements of defamation necessarily "requires a court to interpret any term of [the] collective-bargaining agreement," *Lingle*, 486 U.S. at 407, the Court must consider whether the specific claim here does. In evaluating Section 301 preemption, courts have

held defamation claims preempted when the allegedly defamatory statement was made during an investigation, discharge, or other process governed by the terms of a CBA.  In that context, courts have concluded that defamation claims are preempted because they require interpreting the specific CBA provisions governing those types of proceedings.  *See, e.g.*, *Ali v. Giant Food LLC/Stop & Shop Supermarket Co.*, 595 F. Supp. 2d 618, 622–23 (D. Md. 2009) (statement made during CBA-governed theft investigation); *Howerton v. Earthgrains Baking Cos.*, No. 13-cv-1397, 2013 WL 6512889, at *4–5 (E.D. Cal. Dec. 12, 2013) (statement made in CBA-governed discharge letter); *see also Evans v. Keystone Consol. Indus.*, 884 F. Supp. 1209, 1216 (C.D. Ill. 1995) ("[I]t appears that the vast majority of case law dealing with the question of § 301 preemption of state law defamation claims holds that when statements alleged to be defamatory are made *in the context of a disciplinary or grievance-arbitration procedure established by a collective bargaining agreement*, § 301 preempts the state law claim of defamation." (emphasis added)).

No such CBA provision must be interpreted here.  The allegedly defamatory statements were made in the normal course of employment, not in a CBA-governed proceeding.  Fremstad's defamation claim is not preempted by Section 301 simply because the statements were made at a workplace with a CBA in place.  *See, e.g.*, *Alston v. Balt. Gas & Elec. Co.*, No. 22-cv-1061, 2023 WL 1472020, at *24–26 (D. Md. Feb. 1, 2023) (defamation claim not preempted by § 301 despite CBA); *Busey v. P.W. Supermarkets, Inc.*, 368 F. Supp. 2d 1045, 1050–51 (N.D. Cal. 2005) (same); *Commodore v. Univ. Mech. Contractors, Inc.*, 839 P.2d 314, 320–21 (Wash. 1992) (same); *see also Van Allen*, 921 F. Supp. at 832–33 ("The mere existence of the collective-bargaining agreement between [defendant] and the employees' union will not convert this case into a § 301 suit.").

Directing the Court to more generic provisions of the CBA, the defendants press three arguments for why interpretation of the CBA is nonetheless required here.  None of them is persuasive.

First, the defendants argue that the Court will need to interpret the CBA's management rights provision to determine whether Appelbaum enjoyed a qualified privilege when she made the various statements.  As relevant here, the "common interest privilege" is a doctrine under D.C. law that "protects otherwise defamatory statements made '(1) in good faith, (2) on a subject in which the party communicating has an interest, or in reference to which he has, or honestly believes he has, a duty to a person having a corresponding interest or duty, (3) to a person who has such a corresponding interest.'"  *Mastro v. Potomac Elec. Power Co.*, 447 F.3d 843, 858 (D.C. Cir. 2006) (citation modified) (quoting *Moss v. Stockard,* 580 A.2d 1011, 1024 (D.C. 1990)).

The Court is unpersuaded that it must interpret or construe the CBA's management rights provision when considering the common interest privilege.  To start, Fremstad alleges that the statements were published to *non-employees*, Pl.'s Mem. 4, who were not subject to the CBA, *see Greenfield v. Schmidt Baking Co.*, 485 S.E.2d 391, 400 (W. Va. 1997) (interpretation of CBA not required where statement was published to individuals who were not employees of the defendant or members of the union).

Further, the defendants fail to identify a specific term of the CBA's generic management rights provision or to propose any interpretation that would bear on the privilege's applicability. They simply assert that a court will "be called upon to interpret the provisions of the CBA regarding management's rights and obligations." Defs.' Mem. 10, Dkt. 8-1.  This unsubstantiated assertion fails to convince the Court that it must interpret a specific term in these provisions to apply the privilege factors listed above. *See, e.g., Luecke v. Schnucks Markets, Inc.*, 85 F.3d 356,

362 (8th Cir. 1996) ("[W]hile the provisions of the collective-bargaining agreement will perhaps be 'consulted,' they need not be interpreted in order to resolve any qualified privilege defense that [defendant] may raise in the state defamation proceeding."); *see also Lingle*, 486 U.S. at 413 n.12 ("tangentia[l]" connection to CBA does not trigger preemption (citation modified)).  As noted, the statements here were not made during a CBA-governed proceeding that might require a court to interpret specific provisions such as, for example, those that create duties to disclose information as part of an investigation into employee misconduct.  *See, e.g.*, *DeCoe v. Gen. Motors Corp.*, 32 F.3d 212, 216–17 (6th Cir. 1994) (preemption based on privilege defense where defamatory statement was made within the scope of a sexual harassment policy in the CBA, the specific terms of which would need to be interpreted to ascertain defendants' "duty" under the CBA to "identify and resolve harassment complaints").

Second, the defendants contend that a court will need to interpret the management rights provision to determine whether Appelbaum's first statement was false and defamatory because her statement was a "directive from CEPR management regarding Fremstad's role and responsibilities at the organization."  Defs.' Reply Br. 2, Dkt. 12.  But interpreting CEPR management's authority under the CBA to "assign and direct Fremstad's work" and "determine the processes and methods by which operations are conducted," *id.* (citation modified), does not bear on whether Appelbaum's statement to Fremstad's colleagues was true or false.  Falsity in a defamation case is a question of fact, *Moss*, 580 A.2d at 1023, and "purely factual questions pertain[ing] to the conduct of the employee and the conduct and motivation of the employer" do not "require[] a court to interpret any term of a collective-bargaining agreement," *Lingle*, 486 U.S. at 407.  Fremstad does not contest that CEPR management has the authority under the CBA to direct his work.  *See* Pl.'s Mem. 11–12.  Instead, he alleges that Appelbaum had been removed as his supervisor, Am.

Compl. ¶ 44, that she made this statement outside his presence, *see id.* ¶ 29, and that it was false because CEPR management was in fact permitting him to work with the domestic team, *id.* ¶¶ 32, 44. All of these allegations are factual questions a court can resolve without interpreting the management rights provision, the substance of which Fremstad does not dispute.

Nor must a court interpret the management rights provision to evaluate whether Appelbaum was permitted to make a defamatory statement in light of rights and duties created by the CBA.[1] *See, e.g.*, *Ali*, 595 F. Supp. 2d at 623 (Court "must interpret the CBA in order to determine the nature and extent of [employer's] ability to investigate and discuss suspected employee theft" when evaluating whether plaintiff has sufficiently alleged "wrongful conduct" for his defamation claim); *see also Willis v. Reynolds Metals Co.*, 840 F.2d 254, 255 (4th Cir. 1988) (finding preemption where the "alleged wrong by [employer] . . . directly dealt with its right pursuant to a [CBA] to conduct investigations into possible harassment . . . and the associated right to confront the suspected employee"); *Gore v. Trans World Airlines*, 210 F.3d 944, 950 (8th Cir. 2000) (preemption where "the defendants assert that their actions were required by specific provisions" of the CBA governing "employee safety complaints"). A generic provision that simply retains managers' right to direct their subordinates, a feature of all workplaces, does not create any special duties that require interpretation and protection from the vagaries of state law. *See Hull v. Cent. Transp., Inc.*, 628 F. Supp. 784, 790 (N.D. Ind. 1986) ("[T]he fact that the Agreement recognizes the right of [defendant] to establish management positions and operate the company does not mean that an act done in the course of managing the company involves the

---

[1] The Court observes that one of Appelbaum's allegedly defamatory statements alludes to an ongoing dispute. *See* Am. Compl. ¶ 29 ("Shawn is not permitted to have any connection with the domestic team, until the dispute process is resolved."). Indeed, Fremstad alleges that he had previously filed a grievance against Appelbaum. *See id.* ¶¶ 23–28. But the defendants have not made any argument that any grievance proceeding initiated by Fremstad bears on the truth or falsity of Appelbaum's statements or her right to make them.

interpretation of the Agreement so as to mandate preemption."); *see also id.* at 789 ("[D]efamation suits for comments made during grievance hearings" are preempted to protect CBA-governed grievance proceedings from "intrusions of potentially inconsistent state law.").

Finally, the defendants observe that a provision of the CBA defines "grievance" to include violations of "*law*." Defs.' Mem. 7. Acknowledging that Fremstad's claim arises from law rather than the terms of the CBA, the defendants contend that, because "Fremstad's defamation claim falls clearly within the framework and provisions of the CBA" and therefore should be resolved through arbitration, it is preempted.[2] *Id.* But the mere fact that Fremstad could have raised a complaint concerning Appelbaum's statements through the CBA's grievance procedure does not "render[] the state-law analysis" of his defamation claim dependent on an interpretation of the CBA. *Lingle*, 486 U.S. at 408; *see also id.* at 409–10 ("[E]ven if dispute resolution pursuant to a collective-bargaining agreement, on the one hand, and state law, on the other, would require addressing precisely the same set of facts, as long as the state-law claim can be resolved without interpreting the agreement itself, the claim is 'independent' of the agreement for § 301 pre-emption purposes.").

---

[2] The defendants go a step further and argue that Fremstad's claim *must* be resolved through arbitration because the CBA's broad definition of "grievance" waived his right to sue in court for *any* violation of law. *See* Defs.' Mem. 7. Absent a "clear and unmistakable" waiver, the Court is doubtful of the defendants' position, *Metro. Edison Co. v. NLRB*, 460 U.S. 693, 708 (1983), especially because the CBA goes on to note that "[a]rbitration will only be used to resolve grievances related to a claimed violation, misinterpretation, or misapplication of *a provision of this Agreement*," Defs.' Mot., Ex. A, at 13 (emphasis added). But the Court will leave this question for the Superior Court to address on remand. *See Renteria-Hinojosa v. Sunsweet Growers, Inc.*, 150 F.4th 1076, 1093 (9th Cir. 2025) ("A state court may . . . look to the CBA to determine whether it contains a clear and unmistakable waiver of state law rights without triggering § 301 preemption." (citation modified)).

In sum, the defendants fail to identify any specific provisions, rights, or duties in the CBA that a court must interpret to resolve Fremstad's defamation claim. His claim is therefore not preempted under Section 301 of the LMRA, and the case will be remanded to the D.C. Superior Court.[3]

Accordingly, it is

**ORDERED** that Fremstad's Motion to Remand, Dkt. 10, is **GRANTED**. It is further

**ORDERED** that the defendants' Motion to Dismiss, Dkt. 8, is **DISMISSED AS MOOT**.

The Clerk of Court is directed to close this case after remanding the case to the D.C. Superior Court.

**SO ORDERED.**

DABNEY L. FRIEDRICH
United States District Judge

January 25, 2026

---

[3] Fremstad originally sought to recover his costs, Pl.'s Mem. 15, but later withdrew this request, Pl.'s Reply Br. 8–9, Dkt. 14.